# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID G. MARESCA, | : | No. 3:08cv1194 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| V. | : | |
| | : | |
| BLUE RIDGE COMMUNICATIONS, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion for summary judgment (Doc. 40). Having been fully briefed, the matter is ripe for disposition.

**Background**[1]

This case concerns Plaintiff David G. Maresca's employment as a cable installer with Defendant Blue Ridge Communications. Maresca's employment with defendant began in October 1995. (Defendant's Statement of Uncontested Material Facts (Doc. 42) (hereinafter "Defendant's Statement) at ¶ 3). Plaintiff worked for the defendant until he was injured in a job-related accident on June 29, 1999. (Id.). After December 19, 2000, plaintiff never returned to active work for the defendant. (Id. at ¶ 4). Plaintiff received total disability benefits from May 2001 until April 2006. (Id. at ¶ 5). Defendant provided plaintiff with group health insurance at its expense

---

[1]Both parties filed statements of material facts. The court will rely on the defendant's statement of facts for those facts which are uncontested. Where the parties disagree, the court will note that.

during this period. (Id. at ¶ 6).

From May 2001 until April 2006, plaintiff maintained that he was disabled and unable to return to work. (Id. at ¶ 7). On August 18, 2002, defendant, through its insurer or third party administrator, Inservco Insurance Services, Inc., filed a petition for termination or suspension of plaintiff's benefits with the Pennsylvania Department of Labor and Industry's Bureau of Workers' Compensation. (See Decision on Pencor Service's Petition to Suspend and Terminate Worker's Compensation Benefits, Issued by Judge Thomas M. Kutz, Exh. 7 to Plaintiff's Dep. (Doc. 40-5), at 1). In an opinion issued in November 2004, the Workers' Compensation Judge denied the employer's request to terminate or suspend benefits, finding that defendant had not met its burden to prove that plaintiff had fully recovered from his June 19, 1999 injury or was "capable of returning to his pre-injury job without restrictions." (Id. at 7).

Plaintiff settled his workers' compensation claim through a compromise and release agreement on April 27, 2006. (Defendant's Statement at ¶ 10). Plaintiff received a lump-sum payment of $38,000, which was intended to represent a reduced earning capacity of $93.14 per month for the rest of his work life. (Id. at ¶ 11). Plaintiff never asked defendant to return him to his job or to any other position at the company. (Id. at ¶ 12). After this settlement, defendant sought to end its payments of plaintiff's health insurance benefits. (Id. at ¶ 13). On April 28, 2006, defendant sent plaintiff a letter notifying him that his health insurance benefits had

2

ended because he had been terminated pursuant to a provision in the work agreement between the company and the union that eliminated a worker's seniority after five consecutive years of time off for a work-related injury. (Id.).[2] Plaintiff maintains that he signed this agreement in his worker's compensation case because he was in desperate financial straights, and that he did not intend to waive any right to seek re-employment with the defendant. (Id. at ¶ 11). During his deposition, plaintiff testified that he no longer suffered from a disability after April 2006. (Defendant's Statement at ¶ 8). He also testified that he was well enough to return to work as a cable installer in February 2005. (Id. at ¶ 9). The parties disagree about whether plaintiff had any right to return to work after he settled his workers' compensation case; defendant insists that plaintiff's union contract eliminated a worker's seniority rights when that worker had spent more than five years receiving workers' compensation benefits. (See Plaintiff's Exh. 5, Answers of Lawerence P. Evans to Plaintiff's Interrogatories (Doc. 45), at ¶ 2).

Plaintiff filed the instant *pro se* complaint in this court on June 24, 2008. His complaint contends in Count I that defendant terminated his employment in violation of the Americans with Disabilities Act ("ADA"). Count II alleges that defendant

---

[2]The provision in question provides that "(a) The seniority of an employee, together with all rights inherent to seniority under this Agreement shall be forfeited if his employment is terminated. Termination is defined, but not limited to the following reasons . . . (8) An employee injured while working for the Company shall accumulate credit for continuous service for a period of five (5) years after such injury." (See Agreements Pencor Services, Inc. Blue Ridge Cable Technologies, Inc., Northern and Southern Divisions Palmerton Telephone Company and United Steel Workers of America AFL-CIO December 6, 2004, Exh. 15 to Plaintiff's Dep. (Doc. 40-7) at Art. XIII, Sec. 3).

3

violated the Age Discrimination in Employment Act ("ADEA") when it fired him. The complaint seeks five million dollars in compensatory and punitive damages.

Plaintiff also moved the court for leave to proceed *in forma pauperis.* (Doc. 2). The court granted this motion and ordered that summons be issued. (Doc. 3). The defendant then answered the complaint and the parties engaged in discovery. (Doc. 7). At the close of discovery, defendant filed the instant motion for summary judgment. (Doc. 40). The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

4

otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

Defendant seeks summary judgment on each of plaintiff's claims. The court will address them in turn.

**a. Americans with Disabilities Act**

Under the Americans with Disabilities Act (ADA), an employer cannot discriminate against a qualified individual with a disability because of her disability in regard to her employment. 42 U.S.C.A. § 12112 (a). Further, an employer must make reasonable accommodations to known physical or mental limitations of an otherwise qualified employee with a disability unless such employer can demonstrate the accommodation would impose an undue hardship on the operation of the employer's business. Id. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (holding that "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.").

The plaintiff has the initial burden of establishing a *prima facie* case in an ADA matter. Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996); Newman v. GHS Osteopahtic, Inc., 60 F.3d 153, 157 (3d Cir. 1995). A *prima facie* case is established by the plaintiff when she demonstrates: 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996); Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998).

If the plaintiff meets this initial burden, the court then applies the next step in "the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411

6

U.S. 792, 803-805." Abramson v. William Patterson College, 260 F.3d 265, 281 (3d Cir. 2001). The employer must "proffer a legitimate, non-discriminatory reason for the adverse employment decision." Id. at 282. An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, 32 F.3d at 763. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original). Once the employer meets this burden, the plaintiff must show that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.

Defendant contends that plaintiff cannot prevail on his ADA claim because he is not a qualified individual protected by the Act and thus cannot make out a prima facie case. The ADA establishes that "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The statute further defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or

7

(C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities, left undefined by the statute, have been defined by the Equal Employment Opportunity Commission as "'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing , speaking, breathing, learning, and working.'" Tice v. Centre Area Trans. Auth., 247 F.3d 506, 512 (3d Cir. 2001) (quoting 29 C.F.R. § 1630(2)(i)).

The question of "whether a person has a disability under the ADA is an individualized inquiry." Sutton v. United Air Lines, 527 U.S. 471, 483 (1999). The Third Circuit Court of Appeals has noted that "EEOC regulations provide that an individual is 'substantially limited' in performing a major life activity if the individual is (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 762 (3d Cir. 2004) (quoting 29 C.F.R. § 1630.2(j)(1)). Courts consider "[S]everal factors . . . in evaluating whether an individual is substantially limited in a major life activity: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Id. (quoting 29 C.F.R. §

8

1630.2(j)(2)). In the Third Circuit, this inquiry consists of a two step process: "First, the court determines whether the individual is substantially limited in any major life activity other than working, such as walking, seeing or hearing." Mondzlelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998). If the individual is not limited in that way, "the court's next step is to determine whether the individual is substantially limited in the major life activity of working." Id. at 784.

Defendant points out that plaintiff testified in his deposition that he did not suffer from any physical limitations or impairments at the time of his April 2006 termination. At his deposition, plaintiff was asked "as of April 2006, what physical problems or limitations did you have?" (Plaintiff's Dep. Exh. to Deft's Motion at 14-15). He answered, "None." (Id. at 15). He reported that he could walk and sleep "normally" at that time. (Id.). Plaintiff could care for himself, drive a car and agreed that he "had basically no limitations on [his] everyday activities." (Id.). He asserted that he had no lifting restrictions on him at that time, and could "easily" lift fifty pounds. (Id. at 16-17). Later, plaintiff testified that "I was discriminated against due to may age and maybe the fact of a perceived disability on the part of the company. I have no disability. There's no restriction on any–I can go out and work any job I want." (Id. at 46). Based on this testimony, the court finds that plaintiff was not a qualified individual with a disability. Plaintiff himself admits that at the time he claims he began to attempt to return to work he did not suffer from a disability. As such,

9

plaintiff cannot make out a prima facie case on those terms.[3]

Even if plaintiff could show that he was disabled under the act, he still could not make out a prima facie case. He cannot demonstrate that he suffered any adverse employment action. Plaintiff contends that he suffered an adverse employment action because he was refused an opportunity to return to work after he recovered from his injury. At his deposition, defendant testified that he had been cleared by a doctor, Dr. Feinstein, to return to work in February 2005. (Plaintiff's Deposition, Exh. 1 to Defendant's Motion for summary judgment (Doc. 40) (hereinafter "Plaintiff's Dep.") at 37). After this report, plaintiff reported that he began "pressuring" his attorney to convince his employer to return him to work. (Id.). Still, plaintiff testified that he had never notified defendant of his desire to return to his job as a cable installer. (Id. at 38). He also never requested consideration for another position. (Id.). A workers' compensation judge approved the settlement at a hearing on April 27, 2006. (Id.) Plaintiff contends that he never would have signed that agreement if he had known that he did not retain the right to return to work. (Id. at 39). The next day, the defendant sent plaintiff notice that it had terminated his

---

[3]The court recognizes that defendant could make out the first element of his prima facie case if he could demonstrate that the employer "regarded him" as disabled. Plaintiff could perhaps demonstrate this element of the prima facie case before his termination in April 2006. Of course, defendant may have considered plaintiff disabled during that period because plaintiff himself continued to receive workers' compensation benefits based on an inability to work during that period. Because the case can be disposed of on other grounds, the court will not address defendant's argument that plaintiff should be estopped from claiming disability discrimination by his claims to workers' compensation.

10

employment pursuant to Article XIII, Section 3 of the contract between plaintiff's union and the defendant. (Id. at 42). Plaintiff filed a grievance in relation to this termination, but could not recall that any action had occurred on it. (Id. at 42-43). In any case, he never had any direct contact with defendant after being notified of his termination. (Id. at 43). Lawrence Evans, who was Vice President of Labor Relations and Human Resources for Defendant until December 15, 2006, provided an affidavit declaring that neither plaintiff nor anyone working on his behalf ever contacted him about returning to work in any capacity. (Evans Affidavit (Doc. 40-8) at ¶ 8).

Despite this testimony, plaintiff contends that he did seek reinstatement and was denied. He admits that he never directly asked to be reinstated, but insists that he did not do so at the advice of his lawyer and others working on his workers' compensation claim. As evidence of this situation, he points to a letter from John Blaxland, an employment agent who contacted the defendant in April, 2005. (See Exh. 3 to Plaintiff's Response (Doc. 44)). In that letter, Blaxland wrote plaintiff's employer and informed her that plaintiff's doctor had determined that he could perform regular duty work. (Id.). Blaxland inquired of the employer whether the company had any available positions for the plaintiff. (Id.). Larry Evans, answering for the defendant, reported that no positions were available. (Id.).

Blaxland mailed the letter in question to Evans on April 13, 2005. Blaxland reported that he had been asked by Sharon Sarno of Inservco Insurance Service to

11

perform a Labor Market Survey for plaintiff. (Id.). Before he could complete such a survey, Blaxland first had to "obtain documentation concerning a possible return to work for him." (Id.). Blaxland asked Evans if defendant had any positions available for plaintiff, considering the fact that a doctor had evaluated plaintiff in February 2005 and concluded he could return to work with no limitations. (Id.). Evans checked a box reporting that no work was then available for the plaintiff. (Id.). This letter does not demonstrate that *plaintiff* ever requested a return to his position, or even that Blaxland reported that *anyone* had requested that plaintiff be returned to work. Instead, the letter merely attempts to ascertain whether a position would be available for plaintiff if he could return to work. This letter, therefore, is not evidence that plaintiff every requested and was denied employment by the defendant, whatever his physical condition. An employer cannot be expected to assume that a worker wants to apply for a job. The defendant here thus engaged in no adverse employment action. Since a plaintiff seeking to make out a prima facie case of discrimination must prove the incidence of an adverse employment action, plaintiff cannot make out a prima facie case and summary judgment is appropriate on this claim. See, e.g., See, e.g., Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996); Jones v. United Parcel Service, 214 F.3d 402, 408 (3d Cir. 2000) (finding, in the ADA context, that employer could not be liable on a failure to accommodate claim because employee failed to "make clear that the employee wants assistance for his or her disability.").

    **b. Age Discrimination in Employment Act**

The Age Discrimination in Employment Act (ADEA) prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges of employment, because of an individual's age.'" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991) (quoting 29 U.S.C. § 623(a)). To recover under the act, "'a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision' at issue." Id. (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

No direct evidence of age discrimination exists here. Lacking direct evidence, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armbruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994). Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002). If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.

13

1994)).

Defendant argues that plaintiff cannot prevail on his age discrimination claim because it did not replace plaintiff with any employees. All of the work that plaintiff claims should have been available to him was performed by subcontractors, over whose hiring practices defendant had no control. Moreover, plaintiff never made a request to return to work, and defendant therefore did not make any adverse employment decision. As such, defendant argues that plaintiff cannot make out a prima facie case of age discrimination, and his ADEA claim must be dismissed.

Defendant's challenge to plaintiff's ability to establish his prima facie case, therefore, centers on whether plaintiff suffered an adverse employment action which would entitle him to claim that he had been dismissed and replaced by a worker sufficiently younger to permit an inference of age discrimination. The court agrees that plaintiff can satisfy the first two prongs of the prima facie case. Plaintiff was more than forty years old at the time of the allegedly adverse job action, and thus was within the class protected by the statute. (See Plaintiff's Dep. at 42). Defendant does not dispute whether plaintiff was qualified for the work at issue, and the court therefore finds that defendant concedes that plaintiff can make out that portion of the prima facie case.

As described above, the evidence indicates that plaintiff was not denied a request to return to work by the defendant, and thus he cannot make out a prima facie case that he was denied work despite being qualified. Though plaintiff

14

contends that he expressed a desire to return to work to both his attorney and to the workers' compensation judge in his case, no evidence indicates that he ever communicated to the defendant that he sought employment.  Defendant cannot be charged with refusing to accede to a non-existent request.  Summary judgment is therefore appropriate on this claim as well.

**Conclusion**

For the reasons stated above, the court will grant the defendant's motion for summary judgment.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID G. MARESCA,** | : | No. 3:08cv1194 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| **V.** | : | |
| | : | |
| **BLUE RIDGE COMMUNICATIONS,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 4th day of May 2009, the defendant's motion for summary judgment (Doc. 40) is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

BY THE COURT:


s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court